UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID ROBERT MACIEL PEREIRA
(A-Number: 245-590-872),

      Petitioner,

    v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY,

      Respondent.

Case No.  1:26-cv-1480-DJC-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner David Robert Maciel Pereira entered the United States in 2023 and was re-detained by ICE in 2026.  Petitioner, now proceeding with counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his re-detention without a bond hearing violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

In December 2023, petitioner entered the United States, was detained by immigration officials, and then was released on his own recognizance.  ECF No. 10-1 at 3.  In May 2025, petitioner's application for employment authorization was approved.  *Id*.  Prior to his re-detention, petitioner worked at a local nursing home.  ECF No. 17 at 2.  There is no allegation or evidence that petitioner has failed to comply with the terms of his release.

1

On October 24, 2025, petitioner was arrested and charged in Massachusetts with destruction of property and entering without breaking at night. ECF No. 17-4. On January 23, 2026, the charge for entering without breaking at night was dismissed. ECF No. 17-5 at 4.

On January 6, 2026—before the charge for entering without breaking at night was dismissed—petitioner was re-detained by ICE on account of his arrest and charges. ECF No. 10-1 at 3-4. There is no allegation or evidence that petitioner received a bond hearing either before or after he was re-detained. *See* ECF No. 17 at 3-4.

## Procedural History

On February 20, 2026, petitioner, initially proceeding pro se, filed a petition for writ of habeas corpus.[1] ECF No. 1. On March 18, 2026, respondent filed an answer to the petition. ECF No. 10. Petitioner thereafter filed a traverse. ECF No. 12. On April 2, 2026, I granted petitioner's motion for the appointment of counsel, and counsel appeared one week later. *See* ECF Nos. 11 & 14. On April 27, 2026, petitioner filed a supplemental reply. ECF No. 17. The petition and answer are deemed submitted.[2]

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction

---

[1] On March 24, 2026, the court referred the matter to me. ECF No. 5.

[2] On April 3, 2026—after I granted petitioner's motion for the appointment of counsel, but before counsel appeared—petitioner filed a motion for temporary restraining order. ECF No. 13. In light of my recommendation that the petition be granted, I recommend that petitioner's motion for temporary restraining order, ECF No. 13, be denied as moot.

includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without a bond hearing violates the Fifth Amendment.  ECF No. 1 ¶¶ 46-49.  Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1226(c).  ECF No. 10 at 3.  I address the application of section 1226(c) before analyzing petitioner's due process claim.

Under section 1226(c), the attorney general "shall take into custody" any noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."[3]  8 U.S.C. § 1226(c)(1)(E)(ii).  Relevant here, the term "burglary" has the meaning given such term "in the jurisdiction in which the acts occurred."  *Id*. § 1226(c)(2).  In Massachusetts—where petitioner was arrested and charged—burglary is generally defined as "break[ing] and enter[ing] a dwelling house in the night time, with the intent to commit a felony."  *See* Mass. Gen. Laws ch. 266, §§ 14-15.

Respondent states, without explanation, that petitioner's arrest subjects him to mandatory detention under section 1226(c).  *See* ECF No. 10 at 3 ("Certainly, Petitioner's arrest for breaking and entering and destroying property (commonly known as burglary) falls within section 1226(c)(1)(E)(i)-(ii).").  As noted, "burglary" under Massachusetts law occurs when an individual "breaks and enters a dwelling house in the night time, with the intent to commit a felony."  *See* Mass. Gen. Laws ch. 266, §§ 14-15.  Petitioner was neither arrested for nor charged with burglary.  *See* 8 U.S.C. § 1226(c)(1)(E)(ii).  Rather, the arrest report shows that petitioner was arrested for allegedly violating Massachusetts General Laws ch. 266 § 17, which criminalizes "entering without breaking at night."  *See* ECF No. 17-4 at 6; Mass. Gen. Laws ch. 266, § 17.  Likewise, the criminal complaint initially charged petitioner with "enter at night for felony" in

---

[3] The statute also requires that the noncitizen be "inadmissible" under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7).  8 U.S.C. § 1226(c)(1)(E)(i).  Because petitioner is "present in the United States without being admitted or paroled," he is "inadmissible" under § 1182(a)(6)(A).  *See* 8 U.S.C. § 1182(a)(6)(A)(i).

violation of § 17 and alleged that he "did in the night enter *without* breaking a building, ship, vessel, or vehicle . . . ." ECF No. 17-4 at 1 (emphasis added). Accordingly, because petitioner was not arrested for or charged with burglary as it is defined in Massachusetts, he is not subject to mandatory detention under section 1226(c).

Moreover, even if petitioner were subject to mandatory detention, the charge for entering without breaking at night was voluntarily dismissed on January 23, 2026, because petitioner is a tenant at the residence that authorities allege he entered unlawfully. *See* ECF No. 17-5 at 4; ECF No. 17-4 at 8 (police report listing the address of the alleged crime); ECF No. 17-6 at 2 (lease agreement listing the same address and showing that petitioner is a tenant); ECF No. 17-7 at 2 (email from attorney in Massachusetts alleging that the charge "was dismissed based on the production of the lease"). "[S]everal courts within the Ninth Circuit have found that the Constitution cannot permit mandatory detention without a bond hearing under § 1226(c) where the predicate charge has been dismissed." *Montalvan Reyes v. Warden*, No. 1:26-cv-0441-DC-JDP, 2026 WL 760264, at *3 (E.D. Cal. Mar. 18, 2026) (collecting cases). Accordingly, even if section 1226(c) applied to petitioner when he was re-detained on January 6, 2026, he was no longer subject to mandatory detention when the charge was dismissed seventeen days later. In light of this finding, I turn to petitioner's due process claim.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never

4

been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance in December 2023. ECF No. 10-1 at 3. Prior to his re-detention, petitioner lived in the United States, subject to ICE supervision but outside of custody, for over two years. Petitioner thereby formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released

noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  Petitioner has a private interest in his continued release that developed over the two years between his release and re-detention.  *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high.  Prior to releasing petitioner, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight.  *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community").  Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest.  *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is

'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty.  *See id*.  On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention indicates that it has not taken sufficient efforts to prevent an erroneous deprivation of his liberty.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).  Respondent has not provided any information about the additional burden that would fall on them as a result of being required to provide a bond hearing.  *See* ECF No. 10.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner seeks immediate release or, alternatively, a bond hearing.  ECF No. 1 at 17.  Respondent argues that a bond hearing is the proper remedy.  *See* ECF No. 10 at 6.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful

7

executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). For example, in *Guillermo M.R.*, the petitioner was arrested and charged with vandalism. 791 F. Supp. 3d at 1028. ICE learned of the incident the following day, and officials then interviewed petitioner soon afterwards. *Id*. ICE then waited an additional five weeks to re-detain the petitioner without a pre-deprivation hearing. *Id*. The court held that petitioner was entitled to a pre-deprivation hearing because the respondents' "course of conduct demonstrates their lack of urgency." *Id*. at 1036. Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

While a pre-deprivation hearing is typically required, "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Guillermo M.R.*, 791 F. Supp. 3d at 1036. For example, in *Martinez Hernandez v. Andrews*, the petitioner was re-detained after allegedly violating his parole, including a failed home visit that occurred approximately two weeks before he was re-detained. No. 1:25-cv-1035-JLT-HBK, 2025 WL 2495767, at *3-4 (E.D. Cal. Aug. 28, 2025). The court held that a post-deprivation hearing was appropriate because it was "at least arguable that providing [the petitioner] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *Id*. at *12; *see also J.S.H.M v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, at *1-2, 16 (E.D. Cal. Oct. 16, 2025) (finding that a post-deprivation hearing was appropriate where the petitioner was re-detained one week after allegedly violating his parole).

Here, ICE records demonstrate that immigration officers learned about petitioner's October 24, 2025 arrest the day after it happened.  *See* ECF No. 10-1 at 3; *see also* ECF No. 17-4 at 10 (police records demonstrating ICE's knowledge of the arrest as of October 25, 2025).  ICE records indicate that the agency lodged an immigration detainer with local police, but police allegedly did not comply with that detainer.  *See id.* at 4.  ICE then waited until January 6, 2026—over ten weeks later—to re-detain petitioner.  ECF No. 10-1 at 4.  There is no information in the record about whether ICE attempted to re-detain or contact petitioner before that time.  Respondent also does not address this lengthy gap.

Moreover, ICE records show that the agency knew that petitioner worked at a nursing home in Framingham, Massachusetts, and the criminal complaint listed a residential address for petitioner in Framingham.  *See* ECF No. 10-1 at 2; ECF No. 17-4 at 1.  What is more, ICE ultimately re-detained petitioner in Framingham.  ECF No. 10-1 at 2.  Accordingly, during the ten weeks ICE waited to re-detain petitioner, the agency knew that he was working in Framingham and presumably knew that he was living there, too; at minimum, his Framingham address was seemingly available to immigration officers.  *See id*.  Yet the record shows that ICE waited over ten weeks to utilize this information to re-detain petitioner.  While agency records indicate that officers received "intelligence" that petitioner would be in Framingham on January 6, 2026, there is no evidence suggesting that petitioner had left the area since he was released by local authorities.  *See id*.

Under these circumstances, I find that the government's "course of conduct demonstrates [its] lack of urgency."  *See Guillermo M.R.*, 791 F. Supp. 3d at 1036.  That ICE waited over ten weeks from petitioner's arrest to re-detain him suggests that immigration officers did not find petitioner to be a danger to the community or a flight risk.  More to the point, respondent fails to demonstrate that providing petitioner "with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."  *See Martinez Hernandez*, 2025 WL 2495767, at *12.  Accordingly, I find that petitioner was constitutionally entitled to a pre-deprivation hearing, and thus the appropriate remedy is immediate release.  *See Cardin Alvarez*, 2025 WL 2898389, at *21.

9

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner's motion for temporary restraining order, ECF No. 13, be DENIED as moot.

3. Respondent be ordered to immediately release petitioner (A-Number: 245-590-872) from their custody.  Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing.  If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter in accordance with section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4. The Clerk of Court be directed to serve Golden State Annex Detention Facility with a copy of this order.

5. The Clerk of Court be further directed to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10

IT IS SO ORDERED.


Dated:     April 29, 2026     

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE